**Maryjane GARCIA, on Behalf of Herself and All Others Similarly Situated, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

Civil Action No. 95–2763 (AJL).

United States District Court, D. New Jersey.

Dec. 13, 1995.

Allyn Z. Lite, Goldstein, Till & Lite, Newark, New Jersey, Edward A. Grossmann, Bernstein Litowitz Berger & Grossman, New York City, for Plaintiffs.

Lawrence N. Lavigne, Cynthia E. Appel, Hanlon, Lavigne, Topchik, Herzfeld & Rubin, Edison, New Jersey, Daniel V. Gsovski,

Herzfeld & Rubin, P.C., New York City, for Defendant.

## OPINION

LECHNER, District Judge.

This action by plaintiff MaryJane Garcia ("Garcia"), on behalf of herself and all others similarly situated (collectively, the "Putative Plaintiffs"), alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 *et seq.*, breach of express and implied warranties, negligence, negligent misrepresentation and common-law fraud and deceit against defendant General Motors Corporation ("GMC"). Removal jurisdiction is alleged pursuant to 28 U.S.C. § 1441(a) ("Section 1441(a)").

Currently before the court is the question whether this matter should be remanded to the Superior Court of New Jersey, Law Division, Bergen County (the "Superior Court") pursuant to 28 U.S.C. § 1447(c) ("Section 1447(c)").[1] For the reasons set forth below, this matter is remanded to the Superior Court.

*Facts and Procedural History*

On 1 May 1995, Garcia filed a "class action complaint" (the "Complaint") in the Superior Court, bearing docket number L–4394–95. Garcia's allegations against GMC concern an automobile known as a W–Body Car ("W–Body Car"), which is defined as any Buick Regal, Oldsmobile Cutlass Supreme, Pontiac Grand Prix or Chevrolet Lumina for the model years 1988 to 1993. Complaint, ¶ 1. Garcia alleges she owns a 1990 Chevrolet Lumina. *Id.,* ¶ 4.

Garcia alleges GMC "marketed, advertised and sold W–Body Cars in a deceptive manner by misrepresenting their quality and safety and actively concealing the fact that the W–Body Cars contain a hidden defect, which poses an unreasonable safety risk, as

---

1. At a status conference, the issue of remand was raised. The parties were directed to submit briefs addressing punitive damages and attorneys' fees and to submit reply briefs concerning these issues. In support of the instant motion to remand, Garcia submitted: Brief on Behalf of Plaintiff MaryJane Garcia for Remand to State Court, (the "Moving Brief") and a letter-brief in reply.

In opposition to the motion to remand, GMC submitted: Defendant General Motors Corporation's Memorandum in Opposition to Motion to Remand, (the "Opp.Brief") and Defendant's Reply Memorandum of Points and Authorities in Support of Removal and in Opposition to Plaintiff's Motion to Remand.

162

well as the need for costly repairs." Complaint, ¶ 2. Garcia alleges that GMC "knew or, in reckless disregard for the truth, failed to know," that the rear disc brakes on W–Body Cars, which were manufactured by a division of GMC, contain "defective rear disc brake caliper pins ... which tended to corrode." *Id.* Garcia further alleges that "such corrosion renders the rear disc brakes unusable, creating both a safety hazard and premature wearing of the front and rear disc brakes...." *Id.* Garcia alleges that, as a result of these allegedly defective caliper pins, current and prior owners or lessees of W–Body Cars "suffered a diminution in the value of the vehicles.... [and] damages ... for costly repairs." *Id.* "Plaintiff[s] ... specifically do not seek damages for personal injuries...." *Id.*

Garcia alleges that the Putative Plaintiffs in this matter are "all persons or entities in the United States who currently own or lease" a W–Body Car, "or who previously owned or leased a ... W–Body Car and suffered economic damage as a result of the defect in the caliper pins in ... W–Body Cars." Complaint, ¶ 6. Garcia alleges "approximately three million ... W–Body Cars have been sold in the United States." *Id.,* ¶ 7; *see* Moving Brief at 14 n. 4 (alleging there are three million Putative Plaintiffs).

GMC filed a Verified Petition for Removal (the "Removal Petition") with the Clerk of the court. The Removal Petition alleges jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) ("Section 1332(a)(1)") and 28 U.S.C. § 1367 ("Section 1367"). *Id.,* ¶¶ 6–7. The Removal Petition alleges Garcia is a resident of the State of New Jersey, *id.,* ¶ 1, and also alleges GMC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Michigan. *Id.,* ¶ 2. GMC alleges that "[t]he claims asserted by Plaintiff, if proven, exceed the value of $50,000.00." *Id.,* ¶ 6.

*Discussion*

A. *Background*

Under the general Federal removal statutes, an action brought in state court can be removed by a defendant to a Federal district court if that Federal court would have had original jurisdiction over the action. *See* Section 1441(a).[2] A defendant seeking to remove a case must file "a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served...." 28 U.S.C. § 1446(a).

■ The removing party must show Federal subject matter jurisdiction exists and removal is proper. *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dism'd sub nom. American Standard, Inc. v. Steel Valley Auth.,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Moore v. DeBiase,* 766 F.Supp. 1311, 1315 n. 5 (D.N.J.1991); *Mountain Ridge State Bank v. Investor Funding Corp.,* 763 F.Supp. 1282, 1288 (D.N.J.1991).

■ An action removed to Federal court may be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction...." Section 1447(c). When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. *Boyer,* 913 F.2d at 111; *Steel Valley,* 809 F.2d at 1010; *Moore,* 766 F.Supp. at 1315 n. 5. Moreover, "removal statutes 'are to be strictly construed against removal and all doubts resolved in favor of remand.'" *Boyer,* 913 F.2d at 111 (quoting *Steel Valley,* 809 F.2d at 1010); *see Moore,* 766 F.Supp. at 1315 n. 5; *Mountain Ridge,* 763 F.Supp. at 1288.

2. Section 1441(a) provides in pertinent part:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court ... embracing the place where such action is pending.
28 U.S.C. § 1441(a).

B. *Diversity Jurisdiction Under 28 U.S.C. § 1332(a)(1)*

As stated, removal under Section 1441(a) is proper if a Federal court to which the action is removed would have jurisdiction over the matter had it been filed there originally. GMC alleges jurisdiction pursuant to Section 1332(a)(1). Removal Petition, ¶ 6. Subject matter jurisdiction under Section 1332(a)(1) is proper only in a civil action between citizens of different states "where the amount in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs...." Section 1332(a)(1).

1. *Class Action Issues*

 "[I]n a [F]ederal class action only the citizenship of the named class representatives must be diverse from that of the defendants." *In re School Asbestos Litig.,* 921 F.2d 1310, 1317 (3d Cir.1990) (citing *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969)), *cert. denied sub nom. United States Gypsum Co. v. Barnwell Sch. Dist. No. 45,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991).

In the instant matter, Garcia, the named plaintiff, alleges she is a citizen of the State of New Jersey. Complaint, ¶ 4. GMC is a resident of Delaware and Michigan. Removal Petition, ¶ 5; Affidavit of Sandra J. Donovan, ¶ 2. Accordingly, there is diversity of citizenship between the parties in this matter.

In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), a class action brought under Section 1332(a)(1), the Court reaffirmed the established rule that each plaintiff in the class must independently satisfy the amount-in-

controversy requirement. *Id.* at 301–02, 94 S.Ct. at 512; *see Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.), *cert. denied sub nom. Upp v. Mellon Bank, N.A.,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *Asbestos Litigation,* 921 F.2d at 1315.

GMC argues that the amount-in-controversy inquiry is only appropriate as to Garcia, the named plaintiff, because no plaintiff class has yet been certified. Opp.Brief at 7. It further argues: " '[C]lass actions are not created by mere allegations in a complaint.' " *Id.* (quoting *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1304 (4th Cir.1978)). Neither logic nor the case law supports this argument. On the one hand, GMC argues that the Complaint meets the amount-in-controversy requirement, asserting that allegations in the Complaint must be accepted unless it appears " 'to a legal certainty' " that Garcia cannot recover more than $50,000.00. Opp.Brief at 8 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). On the other hand, GMC argues that the allegations in the Complaint concerning the class of Putative Plaintiffs should be ignored. GMC contends that: "Notwithstanding plaintiff's aspirations to class status, this case is not now a class action, and will not be unless and until this Court certifies it as such.... Jurisdiction over plaintiff's claim, accordingly, is to be evaluated as in an individual action." Opp. Brief at 7. GMC cannot have it both ways: If GMC seeks to extend the *St. Paul* rationale to one part of the amount-in-controversy inquiry, it makes sense to apply it to a related part of the analysis.

Likewise, the case law cited by GMC is unavailing.[3] The courts that have considered

---

**3.** In *Shelton,* the issue was whether court approval of a proposed settlement between individual plaintiffs and the defendant was required under Rule 23(e), although the court had not yet certified the class and the settlement did not affect members of the uncertified class. 582 F.2d at 1301–02. The issue in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 63, 108 S.Ct. 376, 384, 98 L.Ed.2d 306 (1987), also cited by GMC, was whether Section 505(a) of the Clean Water Act confers jurisdiction over citizen suits for wholly past violations of that Act. GMC also cites to a footnote in *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77

S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957). *See* Opp.Brief at 7. The cited footnote simply indicates that jurisdiction in a diversity suit is not destroyed when one party dies and a non-diverse representative is substituted.

In further support of its argument, GMC quotes the Court in *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) ("[T]he jurisdiction of the Court ... depends upon the state of things at the time ... the action is brought."). Opp.Brief at 7. *Keene* concerned an action filed in the United States Court of Federal Claims; a plaintiff is deprived of jurisdiction in

the issue have held that a suit should be treated as a class action for purposes of Federal jurisdiction whether or not the class has been certified. *Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541, 545 n. 1 (9th Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986); *City of Inglewood v. City of Los Angeles,* 451 F.2d 948, 951 (9th Cir.1971); *Visintine v. Saab Auto. A.B.,* 891 F.Supp. 496, 497 n. 3 (E.D.Mo.1995); *Fountain v. Black,* 876 F.Supp. 1294, 1297 n. 5 (S.D.Ga.1994); *Mayo v. Key Fin. Svcs., Inc.,* 812 F.Supp. 277, 278 n. 1 (D.Mass.1993); *Lailhengue v. Mobil Oil Corp.,* 775 F.Supp. 908, 911 (E.D.La.1991); *Craig v. Congress Sportswear, Inc.,* 645 F.Supp. 162, 163 n. 1 (D.Me.1986).

GMC argues that Section 1367 overrules *Zahn,* thereby precluding an inquiry into whether the Putative Plaintiffs each satisfy the amount-in-controversy requirement. Opp.Brief at 13. Section 1367 provides for supplemental jurisdiction over claims that form part of the same case or controversy over which a Federal court has original jurisdiction. "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Section 1367.

As GMC observes, the Fifth Circuit recently decided that under Section 1367, a district court can exercise supplemental jurisdiction over members of a class who do not meet the amount-in-controversy requirement, provided that the claims of the named plaintiffs satisfy the amount-in-controversy requirement. *In re Abbott Labs., Inc.,* 51 F.3d 524, 529 (5th Cir.), *reh'g denied,* 65 F.3d 33 (1995). Faced with this issue, however, the Third Circuit decided not to disturb the *Zahn* holding. *See Packard,* 994 F.2d at 1045–46 & n. 9 (observing that "[s]everal district courts ... have refused to hold that [S]ection 1367 overruled *Zahn* in a class action context") (citing cases). To date, *Zahn* and *Packard* remain good law in the Third Circuit. Accordingly, GMC must establish that each of the Putative Plaintiffs meets the amount-in-controversy requirement.

2. *The Amount–In–Controversy Requirement*

As stated, GMC argues that " 'it must appear to a legal certainty that [Garcia's] claim is really for less than the jurisdictional amount to justify dismissal.' " Opp.Brief at 8 (quoting *St. Paul,* 303 U.S. at 289, 58 S.Ct. at 590); *see also Packard,* 994 F.2d at 1046 ("When it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount, the case must be dismissed...."). On the other hand, Garcia argues that "[a]t all stages of the litigation, it

that court if the plaintiff has another action pending "in any other court ... against the United States...." 28 U.S.C. § 1500. In *Keene,* the Court dismissed the plaintiff's claim for lack of jurisdiction after observing that when the suit was filed against the United States in the Court of Federal Claims, the plaintiff also had pending a third-party claim against the Government in another suit, which was based on the same facts. 508 U.S. at 214–16, 113 S.Ct. at 2044–45.

*Mollan v. Torrance,* 22 U.S. (9 Wheat) 537, 6 L.Ed. 154 (1824), also cited by GMC, is not relevant. The issue in *Mollan* was citizenship of one of the parties. There the Court held that, insofar as citizenship of the parties was concerned, "the jurisdiction of the court depends upon the state of things at the time of the action brought...." *Id.* at 538 *Baxter v. Palmigiano,* 425 U.S. 308 [96 S.Ct. 1551, 47 L.Ed.2d 810] (1976), cited by GMC, was a consolidated appeal concerning procedures at prison disciplinary hearings. Standing was the issue in the footnote GMC cited. 425 U.S. at 312 n. 1 [96 S.Ct. at 1555]. Two plaintiffs in one of the consolidated cases filed suit " 'on their own behalf, and ... on behalf of all other inmates of San Quentin State Prison subject to defendants' jurisdiction....' " *Id.* Without certifying the class, the district court had treated the suit as a class action.

Before the suit reached the Court, one of the named plaintiffs was paroled and the other died; a third inmate intervened. The *Palmigiano* Court held that only the intervening plaintiff had standing, stating "[w]ithout such certification and identification of the class, the action is not properly a class action." *Id.* (citing *Board of School Comm'rs v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975)). *Jacobs* concerned mootness. Six named plaintiffs brought that case, stating in their complaint that "[p]laintiff class members are all high school students attending schools managed ... by the Board...." *Id.* at 129, 95 S.Ct. at 849. All named plaintiffs had graduated before the case reached the Court, and the district court had never certified the class. The Court dismissed the action, stating "[b]ecause ... there was inadequate compliance with the requirements of Rule 23(c), ... the case has become moot." *Id.*

is the party asserting jurisdiction which bears the burden of demonstrating that the matter is properly before the [F]ederal court." Moving Brief at 7 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). GMC's argument is accurate as to a diversity action commenced in Federal court, where a plaintiff has affirmatively alleged the jurisdictional amount. *See Asbestos Litigation*, 921 F.2d at 1315 ("[T]he court is required only to dismiss those class members whose claims appear to a 'legal certainty' to be less than the jurisdictional amount.") (quoting *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590). In the removal context, however, the law is less well-settled, particularly as here, where no amount in controversy has been alleged. *See* Complaint, ¶ 38 ("The total amount of damages suffered by [Garcia] and [Putative Plaintiffs] ... has not yet been fully ascertained at this time and will be proven at trial.").

Several standards have emerged for deciding the amount in controversy when a defendant removes a complaint seeking an unspecified amount of damages. Some courts have held that a removing defendant must prove "to a legal certainty" that the plaintiff's claims are not less than the jurisdictional minimum. *See, e.g., Fountain*, 876 F.Supp. at 1298–99; *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 23 (S.D.W.Va. 1994); *Chouest v. American Airlines, Inc.*, 839 F.Supp. 412, 414 (E.D.La.1993). Other courts have required removing defendants to prove the jurisdictional minimum by a preponderance of the evidence. *See, e.g., De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993); *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir.1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 & n. 2 (7th Cir.1993); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992). Finally, some courts require a removing defendant to show that there is a "reasonable possibility" that the amount in controversy meets the jurisdictional minimum. *See, e.g., Ball v. Hershey Foods Corp.*, 842 F.Supp. 44, 47 (D.Conn.), *aff'd*, 14 F.3d 591 (2d Cir.1993).

The Third Circuit has not decided the appropriate standard to apply in these circumstances. It has simply indicated that where a complaint does not request a precise monetary amount, the district court must make an independent inquiry into the value of the claims alleged. *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir.1993). Further, "[t]he general [F]ederal rule is to decide the amount in controversy from the complaint itself." *Id.* at 145 (citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961)); *see Steel Valley*, 809 F.2d at 1010. In such cases, the amount in controversy should be measured "by a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 146 (citing *Hunt v. Washington State Apple Advt. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *Carey v. Pennsylvania Enters., Inc.*, 876 F.2d 333, 337 n. 12 (3d Cir.1989)).

A review of the facts under any standard indicates that the jurisdictional minimum cannot be met in this matter. GMC contends the $50,000.00 amount-in-controversy requirement has been met. GMC states:

> Since under the New Jersey Consumer Fraud Statute, attorney fees to a prevailing individual plaintiff are available and damages may be trebled, the value of these damages, if proven, would exceed the $50,000.00 jurisdictional minimum for this court's jurisdiction based upon diversity of citizenship under [Section] 1332. In addition, plaintiff is seeking punitive damages on the common law claim of fraud and deceit.

Removal Petition, ¶ 4.

Generally, where both actual and punitive damages are recoverable, "punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied." *Packard*, 994 F.2d at 1046 (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991); *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990)).

Garcia seeks punitive damages for common-law fraud and deceit. Complaint, Prayer for Relief, ¶ (c). GMC argues that puni-

tive damages may be aggregated to satisfy the jurisdictional amount. Opp.Brief at 12 n. 6 (citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, No. 93–1811, 1993 WL 147245, at *2 n. 1 (E.D.Pa. 5 May 1993)). GMC also seeks to characterize an award of punitive damages as a res in which the Putative Plaintiffs would " 'have a common and undivided interest.' " *Id.* (quoting *Zahn*, 414 U.S. at 294, 94 S.Ct. at 508). Accordingly, argues GMC, " 'it is enough if [the] interests [of the Putative Plaintiffs] collectively equal the jurisdictional amount.' " *Id.* (quoting *Zahn*, 414 U.S. at 294, 94 S.Ct. at 508). This argument is inconsistent with *Zahn Packard* and the *Asbestos Litigation.*

■ If each of the Putative Plaintiffs must independently satisfy the amount in controversy with respect to compensatory damages, it is illogical to depart from that requirement in the case of punitive damages. To do so "would undermine the purpose and intent of Congress in providing that plaintiffs in diversity cases must present claims in excess of the specified jurisdictional amount." *Zahn*, 414 U.S. at 301, 94 S.Ct. at 512 (citing *Snyder*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319). Punitive damages cannot be aggregated to satisfy the jurisdictional amount. Instead, it is appropriate to divide the total estimated amount of punitive damages by the number of Putative Plaintiffs to calculate whether they each satisfy the amount-in-controversy requirement.

■ Garcia has alleged a claim under the New Jersey Consumer Fraud Act, which provides:

> In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. § 56:8–19. Once a plaintiff "proves both an unlawful practice under the Act and a resulting ascertainable loss[,]" an award of treble damages and attorneys' fees is mandatory. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24, 647 A.2d 454 (1994). In fact, under the Act, "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." *Id.* (citing *Performance Leasing Corp. v. Irwin Lincoln–Mercury*, 262 N.J.Super. 23, 31–34, 619 A.2d 1024 (App.Div.)), *cert. denied*, 133 N.J. 443, 627 A.2d 1148 (1993).

■ Garcia argues that any attorneys' fees awarded under the New Jersey Consumer Fraud Act should not be considered in the amount-in-controversy inquiry. Garcia argues that attorneys' fees are "costs" under New Jersey law, *see* Moving Brief at 14 (citing New Jersey Court Rule 4:42–9(a)), and observes that costs are not considered in calculating the amount in controversy under Section 1332. Moving Brief at 14–15. As to the other state-law causes of action alleged, Garcia argues that attorneys' fees may not be recovered. *Id.* at 15 (citing New Jersey Court Rule 4:42–9(a)(7), (8) (providing that attorneys' fees may be awarded only where authorized by statute or by the New Jersey Court Rules)). These arguments are unavailing. As discussed, the New Jersey Consumer Protection Act provides for attorneys' fees. N.J.S.A. § 56:8–19.

■ When attorneys' fees are provided for under state law, they must be considered in calculating the jurisdictional amount in controversy. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133, 133, 78 L.Ed. 267 (1933); *Neff v. General Motors Corp.*, 163 F.R.D. 478, 483 (1995) (stating that "[t]he law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by ... state statute; but only a reasonable attorney's fee may be included...") (quoting 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3712, at 176–77 (1985)).

Garcia's alleged damages are indicative of the maximum potential loss to each of the Putative Plaintiffs. Garcia's 1990 Chevrolet Lumina has a present book value in the $6,000.00 to $8,000.00 range.[4] *See* National Automotive Dealers Ass'n Official Used Car Guide (June 1995 ed.). A 1990 Lumina, Euro-model (the most expensive model), with all available options and in "mint" condition with low mileage, has a current book value of $8,400.00. *Id.* Even presuming that the value of that car has been reduced to $0.00 due to defective rear disc brake caliper pins or that repairs have cost $8,400.00, those damages, trebled, would total $25,200.00, although it strains credulity to believe defective rear disc brake caliper pins would render Garcia's automobile *completely* worthless.

Garcia alleges that the Putative Class contains three million members. In a class with three million plaintiffs, the jurisdictional minimum under Section 1332(a) is $150,000,000,000.00. An example is illustrative. A punitive damages award in the amount of $30,000,000,000.00 would amount $10,000.00 for each of the Putative Plaintiffs. Under that scenario, with an assumed average compensatory damages judgment totalling $25,200.00 for each of the Putative Plaintiffs, "reasonable attorneys' fees, filing fees and reasonable costs of suit," *see* N.J.S.A. § 56:8–19, must total more than $44,400,000,000.00 in order for each of the Putative Plaintiffs to reach the jurisdictional minimum.

As explained by the Circuit: "[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer,* 913 F.2d at 111 (quoting *Steel Valley,* 809 F.2d at 1010); *see Institute of Pa. Hosp. v. Travelers Ins. Co.,* 825 F.Supp. 727, 729–30 (E.D.Pa.1993); *Moore,* 766 F.Supp. at 1315 n. 5. Because "a reasonable reading of the value of the rights being litigated," *Angus,* 989 F.2d at 146, indicates there is no way the Putative Plaintiffs could each recover more than $50,000.00, this matter is appropriate for remand to the Superior Court.

*Conclusion*

For the reasons stated, this matter is remanded to the State Court pursuant to Section 1447(c).

4. The Garcia W–Body Car is used for this evaluation because it is known and is in the approximate middle of the model years in question, 1988–93.