**Marvin WEINBERG, on behalf of Himself and all others similarly situated, Plaintiffs,**

v.

**SPRINT CORPORATION, Defendant.**

**Civil Action No. 96–354 (AMW).**

United States District Court,
D. New Jersey.

April 10, 1996.

Allyn Zissel Lite, Goldstein, Till & Lite, Newark, NJ, for plaintiffs.

Paul J. Dillon, Greenberg, Dauber & Epstein, Newark, NJ, for defendant.

## OPINION

PISANO, United States Magistrate Judge:

Before the Court are two motions: first, defendant Sprint Corporation has moved the Court for a stay pending resolution of its application for assignment of the case by the Judicial Panel for Multidistrict Litigation. Plaintiff Martin Weinberg has opposed this

motion and moved the Court to remand the action to the New Jersey Superior Court, Bergen County, the court from which defendant removed the suit. Defendant has opposed this motion, and the Court heard oral argument on March 25, 1996.

## BACKGROUND

In his complaint, plaintiff Martin Weinberg ("Weinberg") alleges that defendant Sprint Corporation ("Sprint") utilizes deceptive and misleading advertising and promotional practices in order to lure customers to use its services. The Complaint alleges that Sprint affirmatively promotes the rate of 10 cents per minute for telephone calls, citing advertisements for the "Sprint Sense" program in which Sprint states that both in-state and out-of-state calls cost 10 cents per minute. Plaintiff claims that the advertisements and promotions do not disclose that Sprint engages in "rounding up," a practice through which Sprint charges more than 10 cents per minute for any call which does not last precisely one minute. When billing customers for long distance telephone service, Sprint allegedly "rounds up" the time charged to the next full minute, thereby raising the rate from the advertised 10 cents to up to 6 dollars per minute.

Plaintiff's Complaint was filed in Bergen County on December 12, 1995 and asserts counts for fraud, negligent misrepresentation, and violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* Sprint removed the action to this Court on January 23, 1996, basing federal jurisdiction on its contention that plaintiff's claims are preempted by and arise under the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.* Sprint then moved the Court for a stay of proceedings pending consideration by the Judicial Panel for Multidistrict Litigation ("JPML") of its motion to transfer this and three similar actions to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1407. Plaintiff Weinberg opposes this motion and argues that the Court should remand the action to state court because it lacks federal subject matter jurisdiction over the suit. In opposing Weinberg's motion to remand,

Sprint asserts that both federal question and diversity jurisdiction exist, enabling this Court to retain jurisdiction and stay the proceedings pending the JPML's resolution of the transfer.

## DISCUSSION

### I. MOTION TO REMAND

■ The general federal removal statute permits a defendant in a state court action to remove the suit to federal district court if federal subject matter jurisdiction existed when the complaint was initially filed. *See* 28 U.S.C. § 1441(a). The removing defendant must establish that federal jurisdiction exists and that removal is proper. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). Following removal, the district court may remand the action back to state court "[i]f at any time before final judgment it appears that [it] lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Plaintiff Weinberg argues that the Court lacks federal subject matter jurisdiction over this matter and therefore seeks remand to state court. When presented with such an argument, the removing defendant must shoulder the burden of establishing the validity of the removal and the existence of federal jurisdiction. *Boyer*, 913 F.2d at 111. Sprint argues that the Court has subject matter jurisdiction over this action based upon both federal question jurisdiction and diversity of citizenship.

### A. Federal Question Jurisdiction

■ Federal district courts are courts of limited jurisdiction, and a civil action brought in state court may be removed to federal court only if the plaintiff originally could have filed the complaint in federal court. 28 U.S.C. § 1441. Section 1331 of Title 28 states that district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" a federal law when an essential element of the plaintiff's cause of action depends for its resolution upon the validity,

construction, or effect of federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983).

■■■ The well-pleaded complaint rule requires the existence of federal question on the face of the plaintiff's complaint in order for the case to be removable under § 1441. *Spellman v. Meridian Bank (Delaware)*, —— F.3d ——, ——, 1995 WL 764548 at *2 (3d Cir.1995) (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). Based on the premise that the plaintiff is the master of the complaint, the rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Thus "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986), and a plaintiff may " 'avoid federal jurisdiction by exclusive reliance on state law.' " *Spellman*, —— F.3d at ——, 1995 WL 764548 at *2 (quoting *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429).

■■■ Applying these principles, the Court concludes that the plaintiff's case as plead in the Complaint lacks federal jurisdiction. As set forth in the Complaint, plaintiff's claims are based upon New Jersey common law and statutory law, without reference to federal law. These claims relate solely to Sprint's alleged misrepresentations in its promotional advertisements and do not depend on any provision of federal law for their resolution. As such, no federal question exists on the face of plaintiff's complaint, and the action therefore does not "arise under" federal law.

Weinberg does not argue that the rates Sprint charges deviate from the tariff rates that, under federal law, Sprint must file with the Federal Communications Commission ("FCC"). Instead, plaintiff seeks disclosure of those rates and damages for the alleged failure to disclose their calculation. The resolution of the suit does not depend upon the "reasonableness of Sprint's billing rates," as Sprint argues, but upon the reasonableness of Sprint's business practices in conducting its advertising campaign. Unlike a claim for unpaid long distance charges, this action is not "based upon" nor does it "draw life from" the tariffs that Sprint files with the FCC. *See MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1096 (3d Cir. 1995).

■■■ Further, no issue of federal law must be decided in order to adjudicate Weinberg's suit. That the trial court may find it necessary to refer to Sprint's published billing rates under the Communications Act does not transform the complaint into one presenting a federal question that is essential to recovery. Thus, the Court finds that a straightforward application of the well-pleaded complaint rule precludes a finding of original federal jurisdiction.[1]

■■■ Sprint also argues that the federal government's regulation of the communications and long distance industries through the Federal Communications Act preempts Weinberg's state law claims. Absent an express Congressional statement, the Supreme Court recognizes two varieties of federal preemption. First, state law is preempted "to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible." *California v. ARC America Corp.*, 490 U.S. 93, 100–01, 109

---

1. Though it does not make the argument in its opposition to this motion, Sprint based its removal in part upon the artful pleading doctrine, which is an exception to the well-pleaded complaint rule. A plaintiff may not avoid federal jurisdiction by artfully disguising a federal claim as a state cause of action. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). In such a case, removal is proper if the court determines that a plaintiff's failure to plead a federal cause of action was a bad faith attempt to disguise a federal claim as a state claim. The Court, however, finds no evidence to support this theory. Plaintiff's claims are not federal in nature, and Sprint offers no facts to suggest that bad faith played a role in plaintiff's choice of claims. As discussed, no federal question exists on the face of plaintiff's Complaint, and the Court finds no evidence that the artful pleading doctrine should apply to support federal jurisdiction in this case.

S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Second, complete preemption applies when federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Sprint bases its arguments for removal on both types of preemption.

Sprint first asserts that an actual conflict between state and federal law requires the preemption of plaintiff's claims in this case. Because its billing practices are permitted by virtue of the tariffs it files with the FCC and by the federal regulations governing long distance carriers, Sprint argues, the application of state common law and statutory law to this case would present an "impermissible conflict," and, accordingly, federal law must preempt the state causes of action.

■■■ Sprint's "actual conflict" preemption argument, however, is presented as a defense to plaintiff's state law claims, and is therefore insufficient to support removal. Discussing the well-pleaded complaint rule, the Supreme Court has repeatedly stated that, "[f]or better or worse, . . . a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 10, 103 S.Ct. at 2847. Further, it is

> settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both

parties concede that the federal defense is the only question truly at issue.

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (emphasis in original). *See also Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. at 2848–49; *Spellman*, —— F.3d at ——, 1995 WL 764548 at *2 (3d Cir.1995). Accordingly, this basis for removal fails.[2]

■■■ Sprint also relies upon "complete preemption," a doctrine crafted by the Supreme Court as an "independent corollary" to the to the well-pleaded complaint rule. The doctrine provides that in some cases, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). However, to invoke the doctrine, "the preemptive force of a statute [must be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547).

Sprint argues that Congress has clearly evidenced an intent to exclusively "occupy the field" in cases against telecommunications providers "that challenge the billings, rates and related practices of the carrier." *See* Opp. Brief at 6 n. 4. Thus Sprint asserts that Sections 201, 202, and 203 of the Communications Act preempt plaintiff's state law causes of action for fraud, negligent misrepresentation, and violation of the New Jersey Consumer Fraud Act.[3]

Discussing this doctrine, the Third Circuit notes that "[t]he well-pleaded complaint rule

---

**2.** This of course does not preclude Sprint from raising its "actual conflict" preemption argument as a defense when the substantive claims are tried in the state court. In the event Sprint's arguments are successful and the trial court finds an actual conflict, federal law would apply to the suit.

**3.** Section 201 of the Communications Act requires that "[a]ll charges, practices, classifications, and regulations for and in connection with [interstate] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or un-

reasonable is declared to be unlawful." 47 U.S.C. § 201(b).

Section 202 makes it unlawful for a common carrier to "make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services. . . ." 47 U.S.C. § 202(a).

Section 203 requires that every common carrier "file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers. . . ." 47 U.S.C. § 203(a).

438

is alive and well and a plaintiff 'may [in most instances] avoid federal jurisdiction by exclusive reliance on state law.'" *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988). Further, in the case of an alleged "actual conflict" in which the court must determine whether state causes of action are preempted by federal law, the state courts are competent to make that determination and "must be permitted to [do so] in cases brought before them." *Id.* Nonetheless, with respect to state law actions removed to federal court, there remains a "very limited area in which a federal court ... is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Id.* at 942.

■ The Third Circuit has adopted a two-pronged test to determine whether a removed state law action falls within this "limited area" of complete federal preemption. District courts should first address whether the allegedly preemptive statute contains civil enforcement provisions under which the plaintiff's state claims could be brought. *Id.* at 942 (citing *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. at 2854). The inquiry "is not whether the federal law provides the same remedy available to the plaintiff under state law, but rather whether there is some vindication for the same interest." *Id.* at 942 n. 2 (citations omitted). If the federal statute provides no provision for adjudication of the right plaintiff seeks to enforce, then no claim arises under federal law, and removal was improper. *Id.* at 942.

■ The second prong of the inquiry examines whether the federal statute contains a clear Congressional intention to permit removal of state claims despite the plaintiff's

exclusive reliance on state law. *Id.* Absent an "affirmative indication" of Congress' intent to permit removal, complete preemption does not apply, and "the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand." *Id.* In such a case, the state court would determine which law to apply based upon whether an actual conflict exists between state and federal law.

In accordance with this test, a comparison of the Communications Act's civil enforcement provision, 47 U.S.C. § 207, with the plaintiff's claims reveals that the interests plaintiff seeks to vindicate are not protected by the federal statute.[4] The language of the statute provides a remedy for suits alleging violations of the Act, including Sections 201, 202, and 203, as Sprint argues. However, Weinberg does not claim that Sprint breached its statutory duty to act in a just and reasonable manner, and he does not allege violations of Sections 201, 202, or 203. The suit does not challenge Sprint's provision of services or its tariff rates, nor does it dispute the calculation of those rates.[5] Instead, plaintiff's state law claims relate to Sprint's advertising practices. Sections 201, 202, and 203 of the Communications Act impose no duty on common carriers to make accurate and authentic representations in their promotional practices, and, therefore, Section 207 provides no remedy for a deviation from such conduct. *See Boyle v. MTV Networks, Inc.,* 766 F.Supp. 809, 816 (N.D.Cal.1991). Accordingly, the Court finds that the Act's civil enforcement provision does not provide a remedy through which a customer may

---

4. The Communications Act's jurisdictional provision provides that

[a]ny person claiming to be damages by any common carrier subject to the provisions of the chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

5. For this reason, the Court declines to address Sprint's argument that the "filed rate doctrine" requires the exercise of federal jurisdiction over this action. The "filed rate doctrine" insulates from judicial challenge the rate filed by common carriers with the FCC and prohibits courts from awarding relief that would impose upon a carrier any rate other than that filed with the FCC. *See MCI Telecommunications Corp. v. Graphnet,* 881 F.Supp. 126, 132 (D.N.J.1995). As discussed *supra,* plaintiff's suit does not challenge Sprint's published tariff rates.

recover for a common carrier's failure to disclose a billing practice.[6] *See In re Long Distance Telecommunications Litig.*, 831 F.2d 627, 633 (6th Cir.1987) (Communications Act did not preempt state common law claims of fraud and deceit based on alleged failure of telephone companies to disclose practice of charging for uncompleted calls).

Claims involving the quality of Sprint's services, the reasonableness of its rates, or the lawfulness of the rates would clearly be preempted by the Act. For instance, in *Ivy Broadcasting Co. v. AT & T*, 391 F.2d 486 (2d Cir.1968), the complaint alleged negligence and breach of contract in the provision of interstate telephone service. The Second Circuit held that the claims were preempted by federal common law, despite the fact that they did not allege violations of specific portions of the Communications Act. Because the torts involved the level of service provided by the defendants and because of a Congressional intent to require uniformity and equality in the service and rates provided by communications companies, the court held that state law could not apply.

■ This action, however, involves an alleged failure to disclose to customers the practice of "rounding up" and relates specifically to statements made in Sprint's advertising promotions. The conduct at issue is neither regulated by the Communications Act nor dependent upon Sprint's status as a regulated long distance carrier. The Court therefore finds that it lacks the authority to recharacterize plaintiff's claims as exclusively federal because the Communications Act does not contain a civil enforcement provision "within the scope of which the plaintiff's state claim[s] fall[ ]." *See Railway Labor Executives Ass'n*, 858 F.2d at 942.

The Court further finds no evidence that Congress specifically intended to permit removal of purely state law claims by completely preempting this field. Defendants have not pointed to, nor has the Court located, any language in the Communications Act establishing an "affirmative indication" of Congress' intent to make state law claims for fraud, misrepresentation, and violation of a state consumer protection statute removable to federal court. *See id.; KVHP TV Partners, Ltd. v. Channel 12*, 874 F.Supp. 756, 761 (E.D.Tex.1995); *Boyle*, 766 F.Supp. at 816.

To the contrary, Congress expressly created a "savings clause" in the Act, which states that

> [n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. This "savings clause" expressly preserves causes of action for breaches of duties that do not exist under the Act. *See MCI Telecommunications v. Garden State Investment Corp.*, 981 F.2d 385, 387 (8th Cir.1992) (citing *Comtronics, Inc. v. Puerto Rico Tele. Co.*, 553 F.2d 701, 708 n. 6 (1st Cir.1977)); *KVHP TV Partners, Ltd.*, 874 F.Supp. at 759. Further, the inclusion of such a clause appears to be inconsistent with a Congressional intent to completely preempt state law claims not addressed through the Act. *Long Distance Telecommunications Litig.*, 831 F.2d at 634;[7] *KVHP TV Part-*

---

**6.** It is worth restating that this case does not challenge the billing practice itself, but the failure to disclose the practice. Sprint argues for the "uniform application of federal law" by stating in its opposition papers that "[t]here is no reason why Sprint's using one-minute minimum billing increments should be judged using New Jersey law." *See* Opp.Brief at 9. Sprint, however, mischaracterizes plaintiff's claims by referring to the adjudication of its *utilization* of one-minute billing increments. Plaintiff's complaint seeks damages for having been fraudulently induced to enroll in Sprint's long distance program because of Sprint's failure to *disclose* its utilization of that practice in its promotions. Clearly Congress has evidenced an intent to achieve a uniform telecommunications system through the application of federal law to the standards of services provided by common carriers. *See MCI Telecommunications*, 71 F.3d at 1094. The Court, however, is unable to locate any indication of a Congressional intent to apply federal law uniformly to challenges to a common carrier's advertising and promotional practices.

**7.** The Sixth Circuit in the *Long Distance Telecommunications Litigation* case compared the Communications Act's savings clause to the clause contained in the Aviation Act, 49 U.S.C. § 1506, which is nearly identical. The court noted that in *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), the Su-

ners, Ltd., 874 F.Supp. at 761; *Cooperative Comm., Inc. v. AT & T,* 867 F.Supp. 1511, 1515 (D.Utah 1994); *Financial Planning Inst. v. AT & T,* 788 F.Supp. 75, 77 (D.Mass. 1992). Inclusion of the savings clause "clearly indicates Congress' intent that independent state law causes of action ... not be subsumed by the Act, but remain as separate causes of action." *Cooperative Comm., Inc.,* 867 F.Supp. at 1515.

As such, the Court finds that the savings clause preserves Weinberg's state law claims against Sprint as independent from and not arising under the Communications Act. The state law causes of action prohibit conduct distinct from that regulated by the Communications Act, and the duties Sprint is alleged to have breached are separate from those owed under the Act. *See Long Distance Telecommunications Litig.,* 831 F.2d at 633; *see also KVHP TV Partners, Ltd. v. Channel 12,* 874 F.Supp. 756, 761–62 (E.D.Tex.1995) (federal Communications Act did not completely preempt state law claims for tortious interference, civil conspiracy, and violation of Texas Deceptive Trade Practices Act); *American Inmate Phone Systems, Inc. v. US Sprint Communications Co.,* 787 F.Supp. 852, 856 (N.D.Ill.1992) (Communications Act did not completely preempt claims for violation of Illinois Consumer Fraud and Deceptive Business Practices Act); *Boyle,* 766 F.Supp. at 816 (Communications Act did not completely preempt claims for violation of California Business and Professions Code); *Bruss Co. v. Allnet Communication Services, Inc.,* 606 F.Supp. 401, 411 (N.D.Ill.1985) (Communications Act did not completely preempt claims for violation of Illinois Consumer Fraud and Deceptive Business Practices Act). Accordingly, the claims in this case may not be "recharacterized" as claims arising under the Communications Act. *See Railway Labor Executives Ass'n,* 858 F.2d at 942.

The Court therefore finds that this action was removed without federal question jurisdiction for three reasons: 1) the causes of action set forth in plaintiff's complaint do not "arise under" federal law; 2) a defense of preemption may not be a basis for removal; and 3) the action does not fall within the doctrine of complete preemption. Accordingly, the Court must address Sprint's alternative argument that 28 U.S.C. § 1332 provides a basis for federal jurisdiction over this action.

### B. Diversity of Citizenship

 Subjection matter jurisdiction based upon diversity of citizenship is proper only in civil actions between citizens of different states "where the [amount] in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs." 28 U.S.C. § 1332(a). Section 1332 requires complete diversity of citizenship between all plaintiffs and all defendants. *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 158 (3d Cir.1995). In a class action, however, citizenship need only be diverse between the named class representatives and the defendants. *In re School Asbestos Litig.,* 921 F.2d 1310, 1317 (3d Cir.1990), *cert. denied sub nom, U.S. Gypsum Co. v. Barnwell Sch. Dist. No. 45,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991).

 As an initial matter, the Court notes that this case has, to date, not been certified as a class action. Despite the absence of certification, the Court will nonetheless apply class action principles, as this circuit holds that a suit should be treated as such for purposes of determining federal jurisdiction whether or not the class has been certified. *See Spellman,* —— F.3d at ——, 1995 WL 764548 at *7 (3d Cir.1995); *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1043 n. 2 (3d Cir.), *cert. denied sub nom, Upp v. Mellon Bank, N.A.,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *Garcia v. General Motors Corp.,* 910 F.Supp. 160, 164 (D.N.J.1995).

 Here, it is undisputed that diversity of citizenship exists between named plaintiff Weinberg and defendant Sprint, and the dispute arises concerning the satisfaction of Section 1332's amount in controversy requirement. In a case involving removal, the

preme Court held the Aviation Act's savings clause to be not " 'absolutely inconsistent' " with a common law action for misrepresentation.

*Long Distance Telecommunications Litig.,* 831 F.2d at 634 (quoting *Nader,* 426 U.S. at 300, 96 S.Ct. at 1985).

removing defendant bears the burden of demonstrating that the statutory requirements of diversity jurisdiction have been met. *Spellman*, —— F.3d at ——, 1995 WL 764548 at *8; *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). The removal statute should be applied stringently, and all doubts should be resolved in favor of remand. *Boyer v. Snap-On Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). This will result in the continuation of the "tradition of reading the diversity statute narrowly so as not to frustrate Congress' purpose in keeping the diversity caseload of the federal courts under some modicum of control." *Spellman*, —— F.3d at ——, 1995 WL 764548 at *10 (citations omitted).

 It is well settled that each plaintiff in a class action must independently satisfy the statutory "amount in controversy" requirement. *See Zahn v. International Paper Co.*, 414 U.S. 291, 301–02, 94 S.Ct. 505, 511–12, 38 L.Ed.2d 511 (1973); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 64 (3d Cir.1994); *Packard*, 994 F.2d at 1045. Accordingly, as the removing party, Sprint must demonstrate that each member of the putative class alleges an amount in controversy greater than $50,000. In the case of a removing defendant asserting federal jurisdiction, the Third Circuit places "great confidence in the allegations of the plaintiff's complaint" because of the presumption that "the plaintiff has not claimed an excessive amount in order to obtain federal jurisdiction." *Spellman*, —— F.3d at ——, 1995 WL 764548 at *8. Thus to determine whether Sprint has met its burden, the Court must look to the allegations contained in the complaint itself. *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir.1993).

 Plaintiff's Complaint seek an unspecified amount of damages including "compensatory damages in an amount to be determined at trial." When determining whether the jurisdictional amount has been satisfied in such a case, the district court must make "an independent inquiry into the value of the claims alleged" in order to determine whether plaintiff's complaint states a claim that meets the jurisdictional amount. *Garcia*, 910 F.Supp. at 165 (citing *Angus*, 989 F.2d at 146). This inquiry should be guided by "a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 146 (citations omitted).

Sprint contends that the $50,000 requirement has been met with respect to at least one member of the putative plaintiff class, which includes all residential customers of Sprint. In its opposition to plaintiff's motion to remand, Sprint states that it has "identified from its computerized records at least three Sprint residential customers (and therefore, members of the putative class) whose long distance usage" in the relevant period has exceeded $50,000. Accordingly, Sprint argues, the amount in controversy requirement has been satisfied with respect to these plaintiffs.

The Court, however, disagrees with Sprint's analysis. An inquiry into the "value of the rights being litigated" should focus not on the total long distance usage of Sprint's customers, but rather on the portion of the total charges that resulted from Sprint's alleged fraud and misrepresentation—the amount representing the difference between 10 cents and the amount actually charged for each minute billed. In making this inquiry, the Court finds that the amount of actual compensatory damages recoverable in this suit could not reach $50,000 for any plaintiff.

 The Complaint also seeks an unspecified amount of punitive damages. When a plaintiff seeks recovery of both actual and punitive damages and such damages are legally recoverable, courts may take into account the claim for punitive damages when determining whether the jurisdictional amount has been satisfied. *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 5–6, 88 L.Ed. 15 (1943); *Packard*, 994 F.2d at 1046. However, courts must scrutinize carefully a claim in which a request for punitive damages comprises the majority of the jurisdictional amount, *see Packard*, 994 F.2d at 1046, for exorbitant punitive damages should not be cause for the transformation of a state action into a federal one. *Neff v.*

*General Motors Corp.*, 163 F.R.D. 478, 483 (E.D.Pa.1995).

■ Plaintiff Weinberg seeks punitive damages for common-law fraud and negligent misrepresentation. Further, Weinberg states a claim under the New Jersey Consumer Fraud statute, which provides for awards of treble damages

> in any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all action under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. 56:8–19. Under the statute, if a plaintiff proves that the defendant engaged in a practice that both violates the Act and has resulted in a loss, an award of both treble damages and attorneys' fees is mandatory. If plaintiff is unable to prove an ascertainable loss resulting from the unlawful practice, only attorneys' fees may be recovered. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24, 647 A.2d 454 (1994). Also, when provided for under state law, attorneys' fees must be considered in the determination of the jurisdictional amount in controversy. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133, 133–34, 78 L.Ed. 267 (1933).

Relying on decisions from the Fifth and Eleventh Circuits, Sprint argues that the Court should aggregate the claims for punitive and treble damages among the putative class members in determining whether the jurisdictional requirement has been met. Sprint also seeks to avoid requiring each class member to individually satisfy the jurisdictional amount by urging the Court to characterize the potential award of punitive damages as a "common fund" in which the putative plaintiffs would have "a common and undivided interest."

This circuit has not yet addressed the question of whether punitive damage claims in a class action may be aggregated to meet the jurisdictional threshold. The Third Circuit, however, recently held that an award of attorneys' fees may not be aggregated in a class action: "the attorneys' fees of each

individual plaintiff combined with the other elements of the prayer for relief must exceed the statutory minimum." *Spellman*, ── F.3d at ── ── ──, 1995 WL 764548 at *9–10.

■ Rather than follow the decisions relied upon by Sprint, the Court will join other district courts in this circuit in finding that it would be "illogical" to permit the aggregation of punitive damage awards while requiring each class member to independently satisfy the jurisdictional amount with respect to compensatory damages. *Garcia*, 910 F.Supp. at 166; *Hamel v. Allstate Indemnity Co.*, 1996 WL 106120 at *2 (E.D.Pa.1996) ("The distribution of punitive damages across the class of claimants is consistent with the principal ... that each class member must individually meet the jurisdictional threshold."); *Pierson v. Source Perrier, S.A.*, 848 F.Supp. 1186, 1189 (E.D.Pa.1994). To accept Sprint's position " 'would undermine the purpose and intent of Congress in providing that plaintiffs in diversity cases must present claims in excess of the specified jurisdictional amount.' " *Garcia*, 910 F.Supp. at 166 (quoting *Zahn*, 414 U.S. at 301, 94 S.Ct. at 512).

■ Sprint's "common fund" argument is similarly unpersuasive. This is not a case in which plaintiffs seek to enforce a joint or common interest. The common fund exception would apply only if class members sued jointly "to enforce a common title or right in which they have a common and undivided interest." *Packard*, 994 F.2d at 1050. In this case, each plaintiff "was injured individually, and in a unique amount that in theory must be proved separately." *Id. See Pierson*, 848 F.Supp. at 1189; *Hamel*, 1996 WL 106120 at *2. Accordingly, the Court will not aggregate the putative class members' claims for punitive damages in its consideration of the amount in controversy.

■ Examining the putative plaintiffs' claims for punitive damages individually, the Court finds it highly unlikely that each member of the class could recover an award sufficient to raise his or her total damage award to $50,000. One way in which a court may make this determination is to divide an estimate of the total award of punitive damages

by the number of potential plaintiffs in the class. *See Garcia,* 910 F.Supp. at 166; *Hamel,* 1996 WL 106120 at *3.

In this case, the size of the class is as yet undetermined. Plaintiff states that the class consists of "many thousands of members," and Sprint contends that the class "appears to include millions of persons." A class consisting of one million Sprint residential customers would require a total damage award of at least $50,000,000,000 in order to meet the jurisdictional threshold. Similarly, with a class of three million plaintiffs, an award of no less than $150,000,000,000 would be necessary for each plaintiff to receive a $50,000 award.

■ If, for example, the putative plaintiffs were to receive an average award of $40,000 in compensatory damages and treble damages and costs, then each punitive damage award must reach $10,000. In order for each plaintiff in a class of three million to receive $10,000 in punitive damages, Sprint must sustain a total punitive award of $30,000,000,000. Sprint has not met its burden of demonstrating to any certainty that such an award would be made. Instead, contemplating awards of compensatory damages, punitive damages, and treble damages and costs under the New Jersey Consumer Fraud Act, the Court finds it to be extremely unlikely that "the value of the rights being litigated" by each plaintiff would reach the $50,000 minimum for federal jurisdiction.

Plaintiff also seeks an injunction enjoining Sprint from engaging in the alleged wrongful conduct. Sprint urges the Court to determine the amount in controversy by estimating Sprint's cost of complying with an injunction. By this measure, Sprint argues, the amount in controversy will surely exceed $50,000, and jurisdiction will be established.

■ The Court declines to adopt such reasoning. The Third Circuit holds that in injunctive actions, "the amount in controversy is measured by the value of the right sought to be protected by the equitable relief." *In re Corestates Trust Fee Litig.,* 39 F.3d at 65. It is, therefore, " 'the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy.' " *Id.* (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3708 at 143–44 (2d ed. 1985)). The Court will not venture "through the looking glass to evaluate [plaintiffs'] claims from the defendant's perspective," *Spellman,* —— F.3d at ——, 1995 WL 764548 at *9, and, accordingly, Sprint's argument fails. Plaintiffs' prayers for injunctive relief, taken alone or when combined with their claims for damages, do not suffice to bring the amount in controversy to the $50,000 threshold.

Sprint has not met its burden of demonstrating that the putative class members' individual damage awards will reach the statutory jurisdictional minimum,[8] and accordingly, the Court finds that diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 does not exist. Because it finds no basis for federal subject matter jurisdiction, the Court is compelled to remand this action to New Jersey Superior Court.

## II. MOTION TO STAY

Having found that original federal jurisdiction does not exist and that this case is

---

**8.** Sprint further argues that once it is determined that one plaintiff's damages exceed $50,000, the Court may exercise supplemental jurisdiction over the remainder of the putative class members' claims, pursuant to 28 U.S.C. § 1367. Section 1367 provides for supplemental jurisdiction over non-federal claims that fall within the same case or controversy over which a federal court has original jurisdiction. *See* 28 U.S.C. § 1367(a). In making this argument, Sprint relies on *In re Abbott Laboratories, Inc.,* 51 F.3d 524 (5th Cir.1995), in which the Fifth Circuit held that Section 1367 supersedes *Zahn's* requirement that each plaintiff in the class independently satisfy the amount in controversy requirement and therefore permits a district court to exercise jurisdiction over members of a class who do not allege $50,000 in damages.

This position, however, depends entirely upon a finding that at least one plaintiff satisfies the jurisdictional amount. Because the Court finds that none of the plaintiffs' claims of compensatory and punitive damages meet the $50,000 requirement, *see infra,* the Court need not and will not reach the issue. *See Spellman,* —— F.3d at —— & n. 22, 1995 WL 764548 at *8 & n. 22; *Packard,* 994 F.2d at 1045–46 & n. 9.

appropriate for remand to New Jersey Superior Court, the Court need not address Sprint's additional motion to stay the proceeding pending resolution of its motion before the JPML. The Court will therefore deny Sprint's motion as moot.

## CONCLUSION

For the reasons set forth herein, the Court finds this case to be lacking federal jurisdiction and, therefore, grants plaintiff Weinberg's motion to remand. The Court also denies as moot Sprint's motion to stay.