927 F.Supp. 273 (1996)
In re AMINO ACID LYSINE ANTITRUST LITIGATION.
FEEDSTUFFS PROCESSING CO., etc., Plaintiff,
v.
ARCHER DANIELS MIDLAND CO., et al., Defendants.
Nos. 95 C 7679, 96 C 2699. MDL No. 1083.
United States District Court, N.D. Illinois, Eastern Division.
May 7, 1996.
Jeffrey J. Parish of Rosenblum, Parish & Isaacs and John H. Boone, San Francisco, CA, for Plaintiff.
Aubrey M. Daniel, III and John E. Schmidtlein of Williams & Connolly, Washington, DC and Robert S. Brewer, Jr. of McKenna & Cuneo, San Francisco, CA, for Defendant.

MEMORANDUM OPINION AND ORDER
SHADUR, Senior District Judge.
This is the fourth tagalong action in this MDL litigation that has required this Court to deal with a motion to remand a previously-removed state court lawsuit.[1] Archer Daniels Midland Co. ("Archer") and its codefendants[2] originally removed the action from the Superior Court of the State of California for the County of San Francisco (its Case No. 974597) to the United States District Court for the Northern District of California (its Case No. C96-0191 BLJ). Archer then urged the latter court (before the MDL Panel acted to transfer the case here) to defer ruling on plaintiff's motion to remand the case until the completion of its presumed transfer by the MDL Panel, so that this District Court could decide the matter.
Until now this opinion has essentially echoed this Court's opinion in a third tagalong action (Equine Competition Products, Inc. v. Archer Daniels Midland Co., 96 C 2631 (May 6, 1996)  and quite properly so, for much of what has been said there is equally applicable here. For that reason this opinion will *274 continue to plagiarize freely from the Equine opinion (the "Opinion," which will be referred to in terms of its slip opinion pagination). And as the next such borrowing, this opinion repeats the Equine characterization (Opinion at 2) that Archer has won the battle for deferral of the remand ruling, but it has lost this war as well.[3]
Just as was true in Equine, this putative class action was filed by Feedstuffs Processing Co. ("Feedstuffs") as an indirect purchaser of lysine (Complaint ¶ 6), designating a proposed class encompassing other indirect purchasers in California (id. ¶ 32). That meant that no federal antitrust claim could be involved (Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)), and Feedstuffs has expressly negated the assertion of any federal-question claims (Complaint ¶ 1). Instead, as did the Equine plaintiff, Feedstuffs has advanced solely state law claims under the California Business and Professions Code (its Section 16720(a), the Cartwright Act, and its Section 17200, the Unfair Competition Act).
Archer's Notice of Removal ("Notice") therefore relied, as it had to, on diversity of citizenship as the predicate for federal jurisdiction. Notice ¶¶ 5 through 14 properly identified the states of citizenship of all of the named litigants and demonstrated the existence of the required total diversity. But as to the other essential branch of diversity jurisdiction  the required amount in controversy  Notice ¶¶ 5 through 17 said only this:
15. The amount of [sic] controversy in this action, exclusive of interest and costs, is believed to exceed the sum of Fifty Thousand Dollars ($50,000). Plaintiff alleges that it is part of a class consisting of thousands of members that have indirectly purchased lysine from July 1992 until such time as a class is certified in this action. (Complaint ¶¶ 32-33). Plaintiff further alleges that defendants' annual lysine sales are substantial. Specifically, plaintiff alleges that: 1) "[a]nnual worldwide sales of lysine total approximately $650 million a year;" (Complaint ¶ 12), and 2) "[d]uring the relevant time period, defendants have sold many millions of dollars of lysine in the United States each year, a significant portion of which sales occur in the State of California." (Complaint ¶ 40). Plaintiff seeks to "recover treble damages for the injuries which Plaintiff and the other members of the Class have sustained as a result of the wrongful actions and conduct of defendants...." (Complaint ¶¶ 1, 3).
16. Further, plaintiff seeks  and if it prevails, has a statutory right to recover  attorneys fees, which in this complex, multiparty antitrust case surely would be in excess of $50,000. This potential liability must be added to the potential value of plaintiff's claims for treble damages in determining the amount in controversy.
17. Under these circumstances, it is believed that plaintiff and at least certain members of the putative Class have claims that exceed $50,000. Accordingly, the amount in controversy requirement as to these parties is met. This Court may exercise jurisdiction over those class members with claims of less than $50,000 pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367.
Unlike Equine Complaint ¶ 26 (quoted in Opinion at 2), Feedstuffs' Complaint contains no specific provision limiting either its own damages or those of other class members to less than $50,000. But Feedstuffs has responded to Archer's vague "believed to exceed" assertion (Notice ¶ 15) with a statement that expresses the contrary position as to Feedstuffs' own damages. And of course it is the burden of the party that seeks to invoke federal jurisdiction to establish the existence of such subject matter jurisdiction  as Archer itself acknowledges in its Defendants' Opposition to Motion To Remand ("D.Mem.") at 7-8:
When a plaintiff seeks to recover an unspecified amount, the defendant must prove "`by a preponderance of evidence'" that the plaintiff's claims are not less than the federal amount-in-controversy requirement. Gaus v. Miles, Inc., 980 F.2d 564, *275 567 (9th Cir.1992) (quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 [56 S.Ct. 780, 785, 80 L.Ed. 1135] (1936)); accord De Aguilar v. Boeing Co., 11 F.3d 55 (5th Cir.1993).
Archer does not contend that it has established (by a preponderance of evidence or otherwise) that over $50,000 is in fact in controversy as between Feedstuffs and all or any of the defendants, and it is right not to make that contention. Clearly it has not satisfied the burden that is placed on every removing defendant in that respect. Instead, just as Archer did in Equine, it attempts to emphasize the prospect that as a matter of common sense some class member or members other than Feedstuffs may possess the requisite amount in controversy (D.Mem. 7-13). In that respect this action parallels Equine entirely, and accordingly (primarily to make this opinion self-contained) this Court will simply pick up upon and repeat what it has just said in its Equine Opinion.
Archer's position is analytically unsound as a predicate for federal jurisdiction. And the reasons for such unsoundness may be set forth without the need for overly extensive discussion.
To begin, it is true that two Courts of Appeals decisions  In re Abbott Labs., 51 F.3d 524, 527-29 (5th Cir.1995) and Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir.1996)  have recently concluded that the supplemental jurisdiction provisions of 28 U.S.C. § 1367(a)[4] have sub silentio overruled the rule, as reconfirmed by the Supreme Court in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that every member of a class must possess the required amount in controversy to confer federal jurisdiction over that class member.[5] But what those cases do not say (and what no other case says) is that supplemental jurisdiction can  like the Indian rope trick  attach itself to nothing. Instead Stromberg, 77 F.3d at 932 (emphasis added), like Abbott Labs., 51 F.3d at 527, has made it plain that the underlying claim itself must be solidly grounded in federal court before the possibility of any piggyback claims under Section 1367(a) can be considered:
But if it is possible for the principal action to be in federal court without any jurisdictional qualms then § 1367(b)[6] does not block adding an additional plaintiff with a closely related claim against the defendants who are already in the federal forum.
"Jurisdictional qualms" are an understatement for what Archer must confront in this case. Because of several interacting factors  the comparative newness of Section 1367, the previously-firmly-established Zahn doctrine and the general prohibition on appellate review of remand orders contained in Section 1447(d)  there has been no occasion for any appellate court to confront directly the contention that Archer offers up here. But there is a closely related doctrine, also in the diversity class action context, that points to the inevitable result.
It is now three-quarters of a century (see Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921)) since the principle was established that In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 162 (2d Cir.1987) has stated in these terms:
It is hornbook law, based on 66 years of Supreme Court precedent, that complete diversity is required only between the *276 named plaintiffs and the named defendants in a federal class action.
Accord, such cases as In re Sch. Asbestos Litig., 921 F.2d 1310, 1317 (3d Cir.1990) and authorities cited there. That established principle, which was reconfirmed by the Supreme Court in Snyder v. Harris, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058-59, 22 L.Ed.2d 319 (1969), remains good law today[7]  certainly nothing in Section 1367(a) even impliedly weakens either that principle or its underpinnings.
Thus the firmly-embedded rule of decision is that the determination of one of the two facets of diversity jurisdiction  the presence or absence of diversity of citizenship  must be based solely on the identity of the name litigants, without reference to the unnamed members of the class or classes to which the name litigants belong. And that being so, there is no room for argument, as a matter of either logic or precedent, that the other facet of diversity jurisdiction  the amount in controversy  is to be determined on any basis other than what is in dispute between those name litigants (and not between some absent plaintiff class member and the targeted defendant).
In sum, it is simply irrelevant (even if true) that any putative class member other than Feedstuffs may have more than $50,000 in controversy with Archer or any of the other defendants. Because Archer has not contended (and of course it has not been established) that Feedstuffs itself reaches the jurisdictional floor, this Court lacks subject matter jurisdiction, so that Section 1447(c) mandates the granting of Feedstuffs' motion to remand. Accordingly this action is ordered remanded to the Superior Court of the State of California for the County of San Francisco, and as is permitted by this District Court's General Rule 30B this Court hereby directs that the certified copy of the remand order be mailed forthwith.
NOTES
[1] This Court's earliest opinions granting remand motions were issued in Ashley v. Archer Daniels Midland Co., 918 F.Supp. 1181 (1996) and Long v. Archer Daniels Midland Co., No. 96 C 1354, 1996 WL 164434 (Apr. 1). This opinion will not repeat the analysis in those earliest cases, instead focusing only on the issues of importance to this action.
[2] Because Archer submitted all later filings both on its own behalf and for its codefendants, only Archer (effectively treated as a collective term for all defendants) will be referred to hereafter.
[3] As Opinion at 2 said, among the epigrams for which Oscar Wilde has become justly famous is this one from Act III of Lady Windermere's Fan: In this world there are only two tragedies. One is not getting what one wants, and the other is getting it.
[4] All further references to Title 28's provisions will simply take the form "Section ."
[5] As a transferee court in a diversity case, this Court would be required to apply the substantive state law of the transferor forum  in this instance California  as though the transfer had involved a mere change of courtrooms rather than a change of situs (Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820-21, 11 L.Ed.2d 945 (1964). But as to questions of federal jurisdiction, this Court must of course apply federal law  and that means its adherence to Seventh Circuit law (in this instance Stromberg). It is therefore irrelevant that the Ninth Circuit has not yet dealt with the interrelationship between Section 1367(a) and the Zahn doctrine that has been stated in the text.
[6] [Footnote by this Court] Section 1367(b) specifies diversity-action exceptions to the conferring of Article III case-or-controversy supplemental jurisdiction under Section 1367(a).
[7] Snyder was the principal progenitor of Zahn in the other aspect that has been referred to earlier in this opinion, but the concept quoted in the text here from Agent Orange is totally independent of the presence or absence of supplemental jurisdiction.