SANDERSON, THOMPSON, RATLEDGE & ZIMNY, individually and on behalf of all others similarly situated, Plaintiff,

v.

AWACS, INC., d/b/a Comcast Metrophone, Defendant.

Civ. A. No. 96–145–LON.

United States District Court, D. Delaware.

March 25, 1997.

See also 935 F.Supp. 541, 949 F.Supp. 1193.

John M. Stull, Wilmington, DE (James M. Orman, Philadelphia, PA, Sherrie R. Savett, and Kenneth L. Fox of Berger & Montague, P.C., Philadelphia, PA, of Counsel), for Plaintiff.

Allen M. Terrell, Jr., and Claudia A. Del-Gross, of Richards, Layton & Finger, Wilmington, DE (Mary E. Kohart, Seamus C. Duffy, Jeanine M. Kasulis, and Mary Catherine Roper of Drinker Biddle & Reath, Philadelphia, PA, of Counsel), for Defendant.

## OPINION

LONGOBARDI, District Judge.

Plaintiff Sanderson, Thompson, Ratledge & Zimny ("Sanderson") filed a putative class action in the Superior Court of the State of Delaware for New Castle County against defendant AWACS, Inc., d/b/a/ Comcast Metrophone ("Comcast"). Comcast removed this action to this Court. Presently before the Court is Sanderson's motion to remand, asserting that this Court lacks subject matter jurisdiction over this action.

This case is one of three separate class actions filed against Comcast in the state courts in Pennsylvania, New Jersey, and Delaware. The claims and allegations asserted in each of the three actions are substantively identical. Comcast removed each of the three actions to federal court, and motions to remand for lack of subject matter jurisdiction were filed in all three. The court in the New Jersey action granted the motion. *See De-Castro v. AWACS, Inc.,* 935 F.Supp. 541 (D.N.J.1996). The court in the Pennsylvania action denied the motion, concluding that it had jurisdiction on the basis of federal question jurisdiction. *See In re Comcast Cellular Telecommunications Litig.,* 949 F.Supp. 1193 (E.D.Pa.1996). For the reasons stated herein, the Court will grant Sanderson's motion.

### I.

Comcast is a provider of cellular telephone services in Pennsylvania, New Jersey, Delaware, and Maryland. Sanderson brought suit on behalf of all persons who contracted with Comcast for cellular phone services during the period of February 15, 1990 to the present. The complaint alleges that it is the custom and practice of the telecommunications industry for telecommunications service providers to charge for service only when, and to the extent that, communication is actually established between a service sub-

scriber and the person whom the subscriber has telephoned. Pursuant to this practice, a service provider commences the imposition of charges for a call when and only if the call is answered. Sanderson asserts that, contrary to industry custom and practice, Comcast commences billing for a call the moment a subscriber initiates a call by pushing the "send" button on the phone. Following the pressing of the "send" button, a period of time elapses (the "non-communication period") during which the subscriber is not in communication with the party to whom the call is made. Sanderson further alleges that Comcast extends the non-communication period by requiring its subscribers to input a personal identification code upon initiation of the call and rounding up all calls to the next highest minute in computing the charge. The complaint charges that Comcast's failure to disclose to its subscribers that they are being billed for the non-communication period violates the Delaware Consumer Fraud Act, 6 Del.Code §§ 2511 et seq., and also constitutes breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.

## II.

Comcast removed this action pursuant to 28 U.S.C. § 1441. Section 1441 provides that "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." Comcast asserts that there are two bases on which this Court can exercise original jurisdiction over this action: federal question jurisdiction (28 U.S.C. § 1331) and diversity jurisdiction (28 U.S.C. § 1332).

Sanderson's motion to remand was filed pursuant to 28 U.S.C. § 1447(c). On a motion to remand, the removing party, as the party urging the existence of jurisdiction, bears the burden of proving that jurisdiction exists. *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). In addition, the removal statute is "strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* (quoting *Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987) ).

## III.

### A.

Comcast first asserts that removal of this action is appropriate pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331. Although not disputing that Sanderson's complaint, on its face, relies exclusively on state law, Comcast asserts that federal question jurisdiction exists because the Communications Act of 1934 (the "Act"), 47 U.S.C. §§ 151 *et seq.,* completely preempts rate regulation of the telecommunications industry, thereby federalizing the causes of action in the complaint.

Section 1331, governing the federal question jurisdiction of the district courts, provides: "The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." It is well settled that a civil action arises under federal law only when a federal question is presented on the face of the plaintiff's "well-pleaded complaint." *Franchise Tax Bd. Of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R.R. Co. v. Motley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Under the "well-pleaded complaint rule," a federal court does not have original federal question jurisdiction over a case in which the complaint raises only state law causes of action, even if it is apparent that a federal issue, such as federal preemption, will be raised in defense of the complaint. *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846–47; *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court").

The Supreme Court, however, has developed an independent corollary to the well-pleaded complaint rule, known as the doctrine of "complete preemption." Under this doctrine, the Court has indicated that "Congress may so completely pre-empt a particu-

lar area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63–64, 107 S.Ct. at 1546. When Congress completely preempts an area of state law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). In these situations, a plaintiff may not defeat removal by omitting to plead this necessary federal question in its complaint. *Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. at 2852–53.

The situations in which the Supreme Court has found complete preemption to exist are limited. There are only two settings in which the Court has concluded that Congress intended to completely preempt the area: (1) suits to enforce a collective bargaining agreement under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and (2) suits for benefits under or to enforce rights provided by a plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), pursuant to section 502(a)(1)(B).

The Court first applied the complete preemption doctrine to the former of these two statutes in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco*, an employer filed suit in state court seeking to enjoin a union from striking in violation of a no-strike clause in the collective bargaining agreement. *Id.* at 558, 88 S.Ct. at 1236. The employer asserted only a common law breach of contract claim. *See Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. at 2852–53. The union removed to federal court, and the Supreme Court held that removal was appropriate because the cause of action arose under section 301 of the LMRA. *Avco*, 390 U.S. at 559–60, 88 S.Ct. at

1236–37.[1] Construing the *Avco* decision in *Franchise Tax Board*, the Court stated:

> The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853–54 (footnote omitted).

In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court extended the complete preemption doctrine first developed in *Avco* to apply to section 502(a)(1)(B) of ERISA.[2] In that case, plaintiff brought suit in state court for, *inter alia*, breach of contract, seeking disability benefits under an ERISA regulated employee benefit plan. *Id.* at 60–61, 107 S.Ct. at 1544–45. Defendants removed, alleging that the district court had federal jurisdiction over the breach of contract claim by virtue of ERISA. *Id.* at 61, 107 S.Ct. at 1545.

The Supreme Court concluded that the *Avco* principle should be extended to section 502(a)(1)(B) of ERISA. The Court concluded that the policy of the inclusion of certain remedies and the exclusion of others under ERISA would be completely undermined if ERISA plan participants were free to pursue state law remedies that Congress rejected in enacting ERISA. *Id.* at 64–65, 107 S.Ct. at 1546–47.

The critical factor relied on by the Court in reaching its conclusion, however, was an "explicit direction" from Congress that claims for benefits under an ERISA plan should be treated as federal questions for jurisdictional

---

1. Section 301 of the LMRA provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be.brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

 29 U.S.C. § 185(a).

2. Section 502(a)(1)(B) of ERISA provides:

 A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

 29 U.S.C. § 1132(a)(1)(B).

purposes in the same manner as claims implicating section 301 of the LMRA. First, the Court noted that the language of the jurisdictional subsection of ERISA's civil enforcement provisions parallels that of section 301 of the LMRA.[3] *Id.* at 65, 107 S.Ct. at 1547. Further, the legislative history of ERISA explicitly referred to section 301 of the LMRA in describing ERISA's civil enforcement provisions, stating:

> [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in the U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor Management Relations Act of 1947.*

*Id.* at 65–66, 107 S.Ct. at 1547 (emphasis added)(alteration in original)(quoting H.R.Conf.Rep. No. 93–1280, p. 327 (1974) U.S.Code Cong. & Admin.News 1974, p. 4639).

The Court of Appeals for the Third Circuit analyzed the Supreme Court's complete preemption jurisprudence in *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936 (3d Cir.1988). In that case, an association of union leaders filed suit in state court asserting that the proposed sale of a railroad company's assets would be a fraudulent conveyance in violation of the Pennsylvania Fraudulent Conveyance Act. *Id.* at 938. The railroad company removed, and ·the issue on appeal was whether the union's claim was completely preempted by the Railway Labor Act ("RLA") and the Interstate Commerce Act ("ICA"). *Id.* at 938–39.

▉ Emphasizing the limited applicability of the complete preemption doctrine the court developed a two-part test for determining whether a federal court is authorized to recharacterize what purports to be a state law claim into one arising under federal law. *Id.* at 942. First, the court must ask "whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Id.* Under this prong, the federal statute must create a federal cause of action which vindicates the same interests as the plaintiff's state cause of action. *Id.* Second, the statutory scheme must provide a clear indication of Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law. *Id.* Absent an "affirmative indication of the requisite Congressional intent to permit removal, there can be no 'complete preemption.'" *Id.*

Applying this analysis, the court concluded that there was no removal jurisdiction under the doctrine of complete preemption. *Id.* Neither the RLA nor the ICA contained civil enforcement provisions, thereby failing the first prong of the analysis. *Id.* Additionally, the court concluded that complete preemption was inapplicable because there was no evidence in the legislative history of either statute that Congress intended to permit recharacterization and removal of what purports to be a state claim. *Id.*

## B.

The stated purpose of the Communications Act of 1934 (the "Act") is to regulate communication by wire and radio to make available a rapid, efficient, world-wide wire and radio communication service. 47 U.S.C. § 151. The Act accordingly imposes duties and obligations on every provider of telecommunication services by wire or radio. *See id.* §§ 201–203. The civil enforcement provision of the Act is contained in 47 U.S.C. § 207, which provides: "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter ... may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any

---

**3.** Section 502(f) of ERISA provides: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection(a) of this section in any action." 29 U.S.C. § 1132(f); *cf.* Section 301 of the LMRA, 29 U.S.C. § 185(a), *supra* note 1.

district court of the United States of competent jurisdiction."

■ Comcast asserts that Sanderson's claims fit within the scope of section 207 by virtue of the duty imposed in 47 U.S.C. § 201(b) on Comcast as a carrier of telecommunciations services. Section 201(b) requires that all charges, practices, classifications, and regulations for and in connection with the furnishing of wire and radio communication services "be just and reasonable," and declares that "any such charge, practice, classification, or regulation that is unjust or unreasonable is.. unlawful." Comcast asserts that each of Sanderson's claims challenge the reasonableness of Comcast's billing practices.

Both the Pennsylvania and New Jersey companion cases to this action concluded that count I for statutory fraud and count II for breach of contract do not fall within the scope of section 201(b). *See In re Comcast,* 949 F.Supp. at 199–1200; *DeCastro,* 935 F.Supp. at 550. Both counts I and II are premised on Comcast's failure to disclose that its billing practices were contrary to industry custom. *See* Complaint ¶¶ 25, 31.

A similar allegation was made in *Weinberg v. Sprint Corp.,* 165 F.R.D. 431 (D.N.J.1996). In that case, plaintiff asserted that defendant engaged in deceptive and misleading advertising in that it failed to disclose that it rounds up phone calls to the next minute in computing its charges. *Id.* at 435. Plaintiff filed state law claims in state court for fraud and negligent misrepresentation. *Id.* Defendant removed, asserting as a basis for federal jurisdiction that these claims were completely preempted by the Act as a challenge to the reasonableness of its billing rates. *Id.* at 435–36.

The Court rejected this argument and held that plaintiff's claims were not preempted by the Act. The court concluded that plaintiff's claims did not challenge the reasonableness of defendant's billing rates, but the reasonableness of its business practices. *Id.* at 436. The court opined that plaintiff

does not claim that [defendant] breached its statutory duty to act in a just and reasonable manner. Sections 201, 202, and 203 of the Communications Act impose no

duty on common carriers to make accurate and authentic representations in their promotional practices, and, therefore, Section 207 provides no remedy for a deviation from such conduct. Accordingly, the Court finds that the Act's civil enforcement provision does not provide a remedy through which a customer may recover for a common carrier's failure to disclose a billing practice.

*Id.* at 438 (citation omitted).

In an attempt to distinguish *Weinberg,* Comcast asserts that Sanderson's claims involve a direct challenge to its method of calculating its rates, as opposed to its advertising and promotional practices. Like the claims at issue in *Weinberg,* however, counts I and II do not challenge the reasonableness of a telecommunication carrier's billing rates or its method of calculating those rates, but its failure to accurately disclose its business practices. Both of these claims are premised on Comcast's failure to disclose its practice of including the non-communication period in calculating the length of a cellular phone call. The complaint charges that these practices were contrary to the customs and practices of the telecommunications industry. It is Comcast's failure to disclose its divergent practices that were not in accordance with these expectations that gives rise to Sanderson's claims for statutory fraud and breach of contract. The reasonableness or unreasonableness of Comcast's billing practices or rates is not at issue.

Comcast's reliance on the Sixth Circuit's decision in *In re Long Distance Telecommunications Litig.,,* 831 F.2d 627 (6th Cir.1987), as requiring a result different from that in *Weinberg* is likewise misplaced. That case addressed ten separate class actions challenging several telecommunications providers' failure to inform its customers of its practices of charging for uncompleted calls, ring time, and holding time. *Id.* at 628. As Comcast points out, the court held that the plaintiffs asserted a claim falling within the scope section 201(b). *Id.* at 629–632. This conclusion, however, was based on the fact that plaintiffs alleged in their amended consolidated complaint that the defendants' charges were unreasonable and unjust in vio-

lation of section 201(b). *Id.* at 630. The present case is distinguishable because, unlike the complaint before the Sixth Circuit, none of Sanderson's claims refer to the duties imposed on Comcast by federal law.[4]

Accordingly, this Court is in agreement with the courts in the Pennsylvania and New Jersey companion cases which have concluded that the statutory fraud and breach of contract claims do not challenge the reasonableness of a billing practice. These claims therefore do not fall within the scope of the civil enforcement provision of the Act.

■ Sanderson asserts that its remaining claims are also premised on Comcast's failure to disclose its billing rates. The courts in both the Pennsylvania and New Jersey companion cases found that count III for breach of the implied duty of good faith and fair dealing and count IV for unjust enrichment challenge the reasonableness of Comcast's billing practices. Count III, after incorporating the preceding paragraphs of the complaint by reference, charges that "[b]y collecting and billing from plaintiff and the class for the non-communications period of time, [Comcast] has breached the implied duty of good faith and fair dealing." Complaint ¶¶ 33–34. Likewise, count IV, after incorporating by reference the prior paragraphs of the complaint, charges that Comcast has been unjustly enriched by billing for the non-communication period of time. *Id.* ¶¶ 35–36. Although the failure to disclose is not specifically mentioned under the subheadings for counts III and IV, these claims must be read in reference to the prior allegations which they both incorporate by reference. The preceding allegations of the complaint charge that Comcast includes the non-communication period in calculating the length of call,

that this practice is contrary to industry custom, and that Comcast failed to disclose this practice to Sanderson. *See id.* ¶¶ 6, 7, 31. There is no allegation that the practice itself was unreasonable, unfair, or unjust.

It is not clear from the face of the complaint whether counts III and IV present challenges to the actual billing practices itself or are premised on Comcast's failure to disclose these practices. Although the former would fall within the scope of the Act's civil enforcement provision, on a motion to remand, the Court must strictly construe the removal statute and resolve all doubts in favor of remand. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990). Accordingly, because it is unclear from the face of the complaint whether these claims challenge the reasonableness or fairness of the practice of charging for the non-communication time, this Court must conclude that they do not.

■ The Court therefore holds that none of Sanderson's claims present a challenge to the reasonableness of Comcast's billing practices. Although Sanderson could have asserted a claim challenging the reasonableness of Comcast's rates or billing practices, as master of its complaint, it chose not to do so. This Court must respect this decision, and not permit Comcast to justify removal on the basis of facts not alleged in the complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396–97, 107 S.Ct. 2425, 2432, 96 L.Ed.2d 318 (1987) ("[Petitioner] impermissibly attempts to create the prerequisites for removal by ignoring the set of facts. presented by respondents, along with their legal characterization of those facts, and arguing that there are different facts respondents might have alleged that would have constitut-

---

4. The Sixth Circuit did engage in a discussion of preemption in *Long Distance*. Prior to the filing of the consolidated amended complaint, plaintiffs in several of the cases filed motions to remand, asserting that their claims arose under state law. *Id.* at 628–29. The district court denied these motions, concluding that plaintiffs' state law claims were preempted by the Act. *Id.* The Sixth Circuit reversed on this issue, concluding that the district court erred in holding that state law claims for fraud and deceit based on the failure to notify customers of its charging practices were not preempted by the Act. *Id.* at 633

The court, however, did not conclude that this finding required a remand of these cases to state court. Instead, the court indicated that plaintiffs may pursue these state claims in federal court. *Id.* at 634. In light of this conclusion coupled with absence of any reference to the Supreme Court's complete preemption cases, it is evident that the court was addressing the doctrine of ordinary preemption which is separate and distinct from the doctrine of complete preemption, as is discussed further *infra*.

ed a federal claim"). The section 201(b) requirement that all billing practices and rates must be reasonable does not vindicate the same interests challenged by Sanderson's claims, Comcast's failure to disclose its non-customary billing practices. Accordingly, Comcast has failed to establish that Sanderson's state law claims fall within the Act's civil enforcement provisions.

In addition, Comcast has failed to establish that the Act provides a clear indication that Congress intended section 207 to completely preempt the telecommunications field.[5] Comcast premises its argument that Congress intended to completely preempt the field on the fact that the need for uniformity in the regulation of telecommunication carriers is a central purpose of the Act and the 1993 amendments to the Act which include a provision, 47 U.S.C. § 332(c)(3)(A), prohibiting State regulation of telecommunications rates. Section 332(c)(3)(A) provides that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service ..., except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." Comcast's arguments confuse the distinction between complete preemption, which is an appropriate basis for federal question jurisdiction, and ordinary preemption, which is not.

The doctrine of ordinary preemption stems from the Supremacy Clause contained in Article VI of the Constitution, which provides that federal law shall be the supreme law of the land. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Under the Supremacy Clause, state law that conflicts with federal law is preempted, i.e., is without effect. *Id.* Congressional intent in enacting federal law is the 'ultimate touchstone' in an ordinary preemption analysis. *Id.* Congress's intent to preempt state law in this manner may be demonstrated by the explicit language of a statute, by an actual conflict between state and federal law, or "if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). Ordinary preemption is generally a federal defense to a plaintiff's suit, and, under the well-pleaded complaint rule, does not provide a basis for federal question jurisdiction. *See Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546. The successful assertion of an ordinary preemption defense in opposition to a state law claim results in the dismissal of the state law claim as being barred by federal law. *See Cipollone*, 505 U.S. at 511–12, 112 S.Ct. at 2614–15 (discussing the lower courts' holdings that certain state claims were barred as being preempted by federal law).

Conversely, under the doctrine of complete preemption, a plaintiff's state law claim is not dismissed as barred by federal law, but instead is converted into a federal cause of action. *Caterpillar*, 482 U.S. at 386, 107 S.Ct. at 2426. Like the doctrine of ordinary preemption, Congressional intent is the main focus of a complete preemption analysis. *Taylor*, 481 U.S. at 64–66, 107 S.Ct. at 1546–48; *Railway Labor Executives Ass'n*, 858 F.2d at 942. In determining whether complete preemption exists, however, the relevant intent is not whether Congress sought to effect uniformity in the field or to preclude states from acting in that area, but whether Congress intended to convert state law claims within the scope of an act's civil enforcement provision into federal claims removable to federal court. *Taylor*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48. The fact that a central concern of the Act was the need for uniformity in rate regulation or that section 332(c)(3)(A) bars state regulation of telecommunications rates is therefore inapposite to the determination of whether Congress intended the civil enforcement provision of the Act to completely preempt the field. Al-

---

5. The New Jersey companion case also reached the conclusion that there is not an affirmative indication by Congress that the civil enforcement provision of the Act should completely preempt the field. *DeCastro,* 935 F.Supp. at 555. The Pennsylvania action did not address this issue. *See In re Comcast,* 949 F.Supp. at 1205.

though at the end of the day these considerations might result in the conclusion that Sanderson's state claims are barred by section 332(c)(3)(A) of the Act under an ordinary preemption analysis, *see Cipollone,* 505 U.S. at 514–31, 112 S.Ct. at 2616–25, Comcast cannot convert Sanderson's state claims into federal ones by injecting an ordinary preemption defense into the action. *See Caterpillar,* 482 U.S. at 398, 107 S.Ct. at 2432 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court").

■■■ Comcast has not pointed to, and this Court cannot find, any language in the Act or its legislative history that provides an "affirmative indication that Congress intended that the civil enforcement provision in section 207 completely preempts state causes of action that fall within its scope." As discussed previously, the legislative history describing ERISA's civil enforcement provision, at issue in *Taylor,* specifically provided that suits within its scope should be treated in a similar fashion as causes of action brought under section 301 of the LMRA. The 1993 Amendments to the Act, which added the preemption provision in section 332(c)(3)(A), contain no such reference to either section 301 of the LMRA, section 502(a)(1)(B) of ERISA, or to the doctrine of complete preemption.

Moreover, Congress's inclusion of the "savings clause" in the Act, 47 U.S.C. § 414, undermines any assertion that Congress intended state law causes of action within the scope of section 207 to be federalized. The savings clause provides: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of such chapter are in addition to such remedies." The savings clause clearly reflects Congress's determination that state law causes of action should not be subsumed by the Act, but remain as independent causes of action. *Accord Weinberg,* 165 F.R.D. at 440; *Cooperative.Communications. Inc. v. AT & T Corp.,* 867 F.Supp., 1511, 1516 (D.Utah 1994). In *Taylor,* the Supreme Court found ERISA's deliberate exclusion of certain remedies to be indicative of an intention to completely preempt the field. *Taylor,* 481 U.S. at 64–65, 107 S.Ct. at 1547 ("[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA") (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987))(alteration in original). Conversely, under the Act, Congress explicitly opted not to preclude any alternative state or federal remedies available to a plaintiff by virtue of the savings clause. This provision provides affirmative evidence of Congress's intention that the civil enforcement provision of the Act should not completely preempt state law claims. Comcast has therefore failed to establish that Congress intended that state law claims falling within the scope of section 207 be removable to federal court.

Accordingly, Comcast has not established either prong of the Third Circuit's test for complete preemption. This Court therefore does not have federal question jurisdiction over Sanderson's claim by virtue of the doctrine of complete preemption.

### C.

Although not raised by Comcast in this case, the court in the Pennsylvania companion case concluded that federal question jurisdiction existed, holding that counts III and IV of the complaint arose under federal common law. *In re Comcast,* 949 F.Supp. at 1204. The Pennsylvania court's holding stemmed from the Court of Appeals for the Second Circuit's decision in *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir.1968). In *Ivy Broadcasting,* plaintiff brought suit in federal court against communications common carriers for breach of contract and negligence in the rendition of interstate telephone services. *Id.* at 488. The Court held that although the Act did not provide a remedy for plaintiff's claims, the need for uniformity in the standards of service warranted recharacterization,of plaintiff's claim as arising under federal common law. *Id.* at 491 ("It seems reasonable that the congressional purpose of uniformity and

equality of rates should be taken to imply uniformity and equality of service. ... It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards").

Since the landmark decision in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), announced that "[t]here is no federal general common law," the Supreme Court has been reluctant to formulate rules of federal common law. *See City of Milwaukee v. Illinois,* 451 U.S. 304, 313, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981) ("the Court has found it necessary in a 'few and restricted' instances to develop federal common law") (citation omitted). The situations in which federal common law will federalize a state law cause of action are even more limited. The Court has held that there exists only a few areas of "uniquely federal interests" which are "so committed by the Constitution and laws of the United States to federal control," that state law claims are displaced and recharacterized as claims arising under the federal common law. *Boyle v. United Technologies Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988). The Court has indicated that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981)(footnotes omitted).

In *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), the county entered into an agreement with the Federal Aviation Administration ("FAA") which obligated it to restrict the use of land adjacent to the county airport. *Id.* at 27, 97 S.Ct. at 2492–93. Plaintiffs, the survivors of deceased passengers of an airline crash, brought suit against the county for breach of contract as third-party beneficiaries under this agreement. *Id.* They asserted that the crash was caused by the county's maintenance of a garbage dump adjacent to the airport in breach of the county's contract with the FAA. *Id.* The Court of Appeals, siting *en banc,* applied federal common law in the determination of whether plaintiffs had standing to sue under the contract. *Id.* at 27–28, 97 S.Ct. at 2492–93.

The Supreme Court reversed. The Court found that plaintiffs' claim did not require decision under federal common law because the litigation was between private parties and no substantial rights or duties of the United States hinged on its outcome. *Id.* at 31, 97 S.Ct. at 2494–95. The Court also rejected the assertion that the United States's substantial interest in regulating aircraft travel and promoting air travel safety, as demonstrated by the Airport and Airway Development Act of 1970, 49 U.S.C. §§ 1701 *et seq.,* was a sufficient federal interest to justify the application of federal common law. *Id.* The Court opined that "the issue of whether to displace state law on an issue such as this is primarily a decision for Congress. Congress has chosen not to do so in this case.... [A]ny federal interest in the outcome of the question before us 'is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of 'local concern.' " *Id.* at 32–33, 97 S.Ct. at 2495 (quoting *Bank of America National Trust & Sav. Ass'n v. Parnell,* 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956)).

■ The present case likewise does not involve a "uniquely federal interest" sufficient to recharacterize Sanderson's claims as claims brought under federal common law. This case is a suit between private parties and does not implicate the rights or obligations of the United States or any of its agencies. The interests implicated in *Miree,* where, in addition to the federal interest in regulating the airways, the interpretation of a federal government agency's contract was at issue, certainly present a more compelling case for the application of federal common law than this case. Moreover, the decision in *Ivy Broadcasting* to apply federal common law under the Act has received widespread

criticism among commentators. Charles Alan Wright, Law of Federal Courts § 60, at 416 (5th ed.1994) (referring to the decision as "extreme" and "questionable"); *Recent Cases: Federal Courts,* 82 Harv. L.Rev. 479, 480–81 (1968) (*Ivy* appears to be the first [case] to create a duty on the ground that it is essential to a congressional policy, despite congressional "failure to create the duty itself or to authorize its creation"); Jack Hassid, *Recent Decisions: Federal Jurisdiction,* 37 Geo. Wash. L.Rev. 425, 428, 431 (1968) (referring to *Ivy Broadcasting* as a "pernicious sub rosa attack on state substantive law").

The Third Circuit has cited *Ivy Broadcasting* favorably, but has not adopted its holding. *See MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086 (3d Cir. 1995). In *Teleconcepts,* MCI, a long distance telecommunications service provider, sued one of its customers to recover the cost of services provided under a tariff it filed with the Federal Communications Commission. *Id.* at 1093. MCI was required to collect the charges on the services specified in the tariff under 47 U.S.C. § 203. The court held MCI's claim arose under federal law, because it was based upon the tariff filed with the Federal Communications Commission. *Id.* at 1096 ("MCI's action is based upon, and draws its life from, the tariff that MCI filed with the Federal Communications Commission").

 The *Teleconcepts* case is clearly distinguishable from the case before the court. In *Teleconcepts,* MCI was suing on an implied right of action based on a federal statute. A federal implied right of action, if one exists, clearly arises under federal law. *See Cort v. Ash,* 422 U.S. 66, 71, 95 S.Ct. 2080, 2084–85, 45 L.Ed.2d 26 (1975); *see also Miree,* 433 U.S. at 33, 97 S.Ct. at 2496 ("Petitioners ... do not rely upon federal-question jurisdiction, which would be more consistent with a theory of an implied federal cause of action") (citation omitted). In the present case, Sanderson's claims charge violations of only state created rights. The presence of an implied federal right of action is ordinarily insufficient to convert state law claims into ones arising under the federal common law.

*See Miree,* 433 U.S. at 33–34, 97 S.Ct. at 2495–96 (indicating that the fact that the Airport and Airway Development Act provided an implied right of action for plaintiffs injuries was insufficient to displace the state law claims asserted in the complaint). As this Court has discussed above, this case is not an extraordinary case implicating "uniquely federal interests," thereby warranting the displacement of state law with federal common law. Accordingly, this Court respectfully disagrees with the court in the Pennsylvania companion case, and holds that Sanderson's claims cannot be recharacterized as arising under federal common law. Federal question jurisdiction is, therefore, not appropriate on this basis.

## IV.

Comcast also argues that this Court has subject matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1332 and 1367. Comcast asserts that section 1332 provides the Court with original jurisdiction, because there is complete diversity between it and the putative class, and at least one member of the putative class brings a claim for more than $50,000. Comcast further asserts that the Court can assert supplemental jurisdiction under section 1367 over the claims of the remaining members of the putative class, contending that section 1367 overruled the United States Supreme Court decision in *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). This Court need not reach the latter argument, as diversity jurisdiction over the case is lacking because Comcast has not established that Sanderson, the only named plaintiff, brings a claim for more than $50,000.

 There are two prongs to the determination of whether a court possesses subject matter jurisdiction by virtue of diversity of citizenship under 28 U.S.C.. § 1332. First, the action must be "between citizens of different States," i.e., there must be complete diversity between the plaintiffs and the defendants. *See Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1258 (3d Cir.1977) (citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). In the class action context, it is well-

settled that only the citizenship of the representative party must be diverse from that of the defendant in determining whether there is complete diversity. *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969); *In re School Asbestos Litig.*, 921 F.2d 1310, 1317 (3d Cir.1990). Sanderson concedes that there is complete diversity between it and Comcast.

The second prong of the diversity analysis requires that "the matter in controversy exceed[ ] the sum or value of $50,000." 28 U.S.C. § 1332. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the United States Supreme Court held that any plaintiff, named or unnamed, whose claim does not independently satisfy the jurisdictional amount requirement must be dismissed from the case. *Id.* at 301, 94 S.Ct. at 511–12. This holding has recently been challenged after the enactment of the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section 1367(a) provides:

(a) Except as provided in subsections (b) and (c) ... in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to' be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction would be inconsistent with the jurisdictional requirements of section 1332.

The dispute between the holding in *Zahn* and section 1367 involves the scope of a court's pendent party jurisdiction. In other words, whether a court, after establishing the existence of diversity jurisdiction over the case, may exercise jurisdiction over claims by class members that do not satisfy the amount in controversy requirement. Neither *Zahn* nor section 1367 addresses the scope of the court's original jurisdiction under section 1332.

■ It is clear that a court does not have subject matter jurisdiction based on diversity of citizenship where each member of the plaintiff class brings a separate and distinct claim, none of which satisfy the amount in controversy requirement. *Snyder v. Harris*, 394 U.S. 332, 336–40, 89 S.Ct. 1053, 1056–59, 22 L.Ed.2d 319 (1969). The Supreme Court, however, has never directly addressed whether its subject matter jurisdiction over the case is lacking where the named plaintiff's claims do not satisfy the amount in controversy requirement, but the claims of absent class members meet the jurisdictional threshold.

■ Several district courts have concluded that if the claims of the named plaintiff do not satisfy the amount in controversy requirement, the court lacks subject matter jurisdiction over the entire case. *In re High Fructose Corn Syrup Antitrust Litigation*, 936 F.Supp. 530, 532 (C.D.Ill.1996) *In re Amino Acid Lysine Antitrust Litigation*, 927 F.Supp. 273, 276 (N.D.Ill.1996); *Bishop v. General Motors Corp.*, 925 F.Supp. 294, 297 (D.N.J.1996); *Asten v. Southwestern Bell Telephone Co.*, 914 F.Supp. 430, 434 (D.Kan. 1996); *Quebe v. Ford Motor Co.,*, 908 F.Supp. 446, 450 n. 2 (W.D.Tex.1995). This Court agrees that a court does not have subject matter jurisdiction to hear the claims of any members of the class when none of the named parties independently satisfy the amount in controversy requirement.

■ It is clear that dismissal of an action is mandated if the court lacks subject matter jurisdiction at any stage of the proceedings. Fed.R.Civ.P. 12(h)(3); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Prior to class certification, the action is one brought by the named plaintiff individually, seeking to join others upon certifica-

tion to form a class action pursuant to Rule 23. *See Pharo v. Smith,* 621 F.2d 656, 664 (5th Cir.1980); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1304 (4th Cir.1978); *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974); *see also* John W. Welch, *Comment: Continuation and Representation of Class Actions Following Dismissal of the Class Representative,* 1974 Duke L.J. 573, 596–97. As the Court of Appeals for the Fourth Circuit recognized,

> class actions are not created by mere allegations in a complaint. It is the actual certification of the action as a class action under [Federal Rule] 23(c) and (a) which alone gives birth to "the class as a jurisprudential entity," changes the action from a mere individual suit with class allegations into a true class action qualifying under 23(a), and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action.

*Shelton,* 582 F.2d at 1304 (footnotes omitted). Given the fact that prior to certification of a plaintiff class, the only plaintiff before the court is the representative party, it necessarily follows that a court which does not possess jurisdiction over the claims of this party must dismiss the case for want of jurisdiction. *See* Welch, *supra,* at 596.[6]

 In the present case; Comcast does not allege that Sanderson's claims satisfy the amount in controversy requirement. Although Comcast asserts that the claims of several unnamed class members exceed $50,000, this assertion is irrelevant for purposes of determining whether this Court has diversity jurisdiction over the class action pursuant to section 1332, because none of these individuals are parties before the Court. Because Comcast has not met its burden of establishing that Sanderson's claim satisfies the jurisdictional threshold, the Court does not have jurisdiction to make the determination of whether certification is appropriate. Accordingly, this Court does not have subject matter jurisdiction over this case pursuant to section 1332. In the absence of subject matter jurisdiction over the case, Comcast's assertion that this Court has supplemental jurisdiction over the claims of class members that do not satisfy the amount in controversy requirement is moot.

### V.

Because this Court does not have subject matter jurisdiction over this action, Sanderson's motion for remand will be granted.

---

**6.** Further support for this conclusion is derived from Supreme Court precedent addressing dismissal of a class action for lack of standing or mootness. The Supreme Court has indicated that a class action must be dismissed under Article III of the Constitution, if the named parties lack standing to bring suit or their claims become moot prior to class certification. *See Board of School Commissioners of the City of Indianapolis v. Jacobs,* 420 U.S. 128, 129, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975) ("a case or controversy no longer exists between the named plaintiffs and the petitioners ... The case is therefore moot unless it was duly certified as a class action pursuant to Fed. Rule Civ. Proc. 23 ..."); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class"). Likewise, if a district court does not possess subject matter jurisdiction over the claims of the named plaintiff, it would not have the authority as a court of limited jurisdiction to maintain the class action, pursuant to the holdings in *Jacobs* and *O'Shea.* The Court's ability to maintain the class action is therefore contingent on its ability to assert jurisdiction over the claims of the named plaintiff.